IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD L. ZARAGOZA, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| | : NO. 08-96 |
| BASF CONSTRUCTION CHEMICALS, LLC Successor-in-Interest to SKW-MBT OPERATIONS, INC., | : |
| Defendant. | : |

MEMORANDUM AND ORDER

**Tucker, J.**                                                                                                         February ___, 2009

      Presently before the Court is Defendant's Motion for Summary Judgment (Doc. 17). Upon careful consideration of Defendant's Motion, Plaintiff's Answer to Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment (Doc. 18), Defendant's Response in Support (Doc. 19), Defendant's Response in Opposition to Plaintiff's Cross-Motion (Doc. 21), and Plaintiff's Reply (Doc. 22), for the reasons set forth below this Court will grant Defendant's Motion.

**I.       Background**

      Plaintiff Richard Zaragoza, a temporary worker at BASF Construction Chemicals, LLC's (hereinafter "BASF") facility from June 21, 2007 through September 11, 2007, brings this personal injury suit against BASF for serious injuries he sustained while working at its facility.[1]

---

[1] Defendant BASF Construction Chemicals, LLC became the successor in interest of SKW-MBT, after it obtained legal ownership of a certain large industrial building located in Bristol Township, Bucks County, Pennsylvania on December 27, 2000. From December 27, 2000 to September 11, 2007, SKW-MBT leased the facility to BASF Distribution Center, which is also known as or does business as

At the facility, BASF engages in the manufacture, production and distribution of stucco products. Since BASF has taken over the facility, the building has developed certain defects including, but not limited to, leaks in the roof. These leaks permit rainwater to drip into the interior of the facility and down onto the floors, where part of the business operations of BASF are conducted. On September 11, 2007, Mr. Zaragoza, then an employee of a temporary labor service utilized by BASF, was working at the facility having been assigned to its Powder Department for the day. During the course of moving bags full of stucco from the conveyor system onto surrounding pallets, Mr. Zaragoza walked in the vicinity of the distribution area and stepped into a large accumulation of rainwater on the floor. This caused Mr. Zaragoza to slip, lose his balance and fall backward. Mr. Zaragoza landed on, and became entangled in, the moving conveyor system. This accident led to serious injuries to, and a functional loss of use of, Mr. Zaragoza's right forearm, wrist, hand, and fingers.

At the time of his fall, Mr. Zaragoza was an employee of Adecco USA, Inc., successor-in-interest to Adecco North America, LLC (hereinafter "Adecco") who was assigned to work at BASF pursuant to a national contract entitled "Preferred Agreement for Temporary Personnel Agency" signed in 2001 between BASF Corporation and Adecco (hereinafter "the Agreement"). Under the terms of the Agreement Adecco supplied temporary workers to help staff BASF Corporation subsidiaries and affiliates, including BASF. The Agreement set forth the responsibilities of both Adecco and BASF Corporation as respects the temporary workers. The Agreement essentially provided that Adecco would retain responsibility for all payroll services, workmen's compensation insurance, and day-to-day administrative services for temporary

---

BASF Americas Corporation; BASF Aggenetics, LLC; and BASF Admixtures, Inc.

workers such as Mr. Zaragoza. Under the Agreement Adecco would charge BASF for a temporary worker's time, services and expenses after the worker completed and returned the requisite time cards to Adecco. The Agreement also established that Adecco would maintain ultimate control over the temporary employees placement and financial arrangements. Significantly, the Agreement specifically contemplated that BASF would retain exclusive control over the day-to-day direction and supervision of Adecco employees by providing that "[a]ll work performed by personnel shall be performed under the general direction of a BASF employee..." and that "[Adecco] shall cause its Personnel assigned to perform Work and Services for BASF to comply with BASF's rules and procedures...."

## II.   Discussion

### A.   Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against opponent, even if the quality of the movant's evidence far outweighs that of its opponent."  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

  B. *"Borrowed Servant" Doctrine*

  BASF asserts that it is immune from Plaintiff's suit because it was Mr. Zaragoza's "statutory employer" as contemplated by the Pennsylvania Workmen's Compensation Act (hereinafter "the Act").  77 P.S. § 1 et seq.  In determining whether BASF was indeed Mr. Zaragoza's statutory employer, "any factual discrepancies are for the trier of fact to resolve."  Keller v. Old Lycoming Twp., 286 Pa. Super. 339, 345 (1981).  Furthermore, where, as here, the

facts are not in dispute, "the issue of whether an employer is a 'statutory employer' for purposes of the Workmen's Compensation Act is properly the subject of a motion for summary judgment, as 'whether the facts as they are determined to exist constitute an employment relationship is strictly a question of law.'" Wilkinson v. K-Mart, 412 Pa. Super. 434, 437-38 (1992) (citing Keller, 286 Pa. Super. At 345).

It is well settled under Pennsylvania law that an employee's claims for damages against their employer, which arise from a personal injury are generally barred.  77 P.S. § 481.  Thus, the Act is "the exclusive method for securing compensation for injuries incurred in the course of employment if the person from whom compensation is sought is the claimant's employer."  Id.; Virtue v. Square D Company, 887 F. Supp. 98, 100 (M.D. Pa. 1995).  Similarly, it is well established that a non-traditional employee is barred from recovery for a personal injury against his *de facto* employer.  Mature v. Angelo, 97 A.2d 59, 60 (1953).   This is because, under the "borrowed servant" doctrine, a person who is in the general employ of one employer may be transferred to the service of another employer in such a way that the transferred employee effectively becomes an employee of that second employer.  Virtue, 887 F. Supp. at 100-01 (quoting Red Line Express Co., Inc. v. Worker's Compensation Appeal Board (Price), 588 A.2d 90, 93 (1991)) (citations omitted).

While there remains a factual presumption that a borrowed employee remains in the employ of his original employer, this presumption is rebuttable by evidence tending to show that the borrowing employer assumed and exercised "control" over the borrowed employee.  North Penn Transfer Inc. v. Workmen's Compensation Appeal Board (Michalovicz), 61 Pa. Commw. 469, 475 (1981) (citations omitted).  Hence, the critical test for determining whether an employee

is a "borrowed servant" was established in *Mature v. Angelo* where that court stated:

> *the crucial test* in determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned *is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it....*A servant is the employee of the person who has the right of controlling the manner of his performance of the work, irrespective of whether he actually exercises that control or not.

373 Pa. at 596 (emphasis added). Here, the undisputed facts support the Court's conclusion that BASF was Mr. Zaragoza's "statutory employer," and that he was BASF's "borrowed servant," under the Act. Indeed, BASF's right to instruct and control Mr. Zaragoza's day-to-day activities while at the facility is plain.

For example, Mr. Zaragoza received and wore an employee identification badge from BASF, the mere presence of which raises a rebuttable presumption that the employer to whom the logo referred (BASF) was the employer of the employee wearing it. Wilkinson, 412 Pa. Super. at 439. Also, while not dispositive, the Agreement expressly provided that BASF would retain exclusive control over the day-to-day direction and supervision of temporary personnel from Adecco at the facility. This exclusive control included Mr. Zaragoza's attendance at a BASF orientation, safety meetings, and duty to work under BASF policies and procedures. (See Pl.'s Dep. at 13:3-18). It is also notable that no Adecco supervisors were present in any part of the BASF facility and, thus, Adecco had no ability or authority to control Mr. Zaragoza's performance of his day-to-day assignments while at BASF. (See Pl.'s Dep. at 28:10-18).

Indeed, before Plaintiff began work at BASF, he was instructed by Adecco to speak with management at BASF about his on the job responsibilities.  Morever, each day when Mr. Zaragoza reported to work he reported directly to the BASF facility.  (See Pl.'s Dep. at 51:14-52:7).  Mr. Zaragoza received his work assignments directly from BASF supervisors who gave him instructions, any necessary training, and supervision while he performed his daily services at BASF–Mr. Zaragoza received no such training or instruction from any employee at Adecco.  (See Pl.'s Dep. at 53:7; 55:12-56:8).  In addition, BASF maintained responsibility for scheduling Mr. Zaragoza's hours on a daily basis.  (See Pl.'s Dep. at 51:14-52:12; 57:9-22).  Finally, the Court notes that BASF supplied Mr. Zaragoza with all the equipment he used while at work.  (See Pl.'s Dep. at 56:9-57:1).  Under *Mature* and its progeny, Pennsylvania courts have consistently distinguished cases where, as here, an employee is borrowed without equipment from his original employer.  Wilkinson, 412 Pa. Super. at 439.  Under such circumstances, the crucial test remains the issue of control.

  In the face of this evidence, Mr. Zaragoza asserts that at all times he remained an employee of Adecco.  Indeed, Adecco determined where Mr. Zaragoza would be sent to work, the circumstances by which he could leave an employer or be fired, handled all matters related to his pay, and maintained and paid out workmen's compensation insurance to him after his accident.   These matters, however, are all peripheral to establishing the crucial issue at stake here–the right to "control" Mr. Zaragoza's day-to-day activities at work.  English v. Lehigh County Auth., 286 Pa. Super.312 (1981) (ruling that defendant was plaintiff's statutory employer despite the fact that plaintiff's temporary employment agency paid his wages, unemployment compensation taxes, workmen's compensation insurance, retained the right to fire or discipline

him, had exclusive control over his job assignments, and withheld his taxes from his wages); Supp v. Erie Ins. Exchange, 330 Pa. Super. 542, 550 (1984) (finding that a lending employer's payment of workmen's compensation insurance was not an impediment to a finding that the borrowing employer was immune from suit under the Act); Ashman v. Sharon Steel Corp., 302 Pa. Super. 305, 314 (1982) ("which employer actually hired the servant, which paid his wages, and which issued his W-2 form...are peripheral matters and not controlling."). These matters are peripheral because a "borrowed servant" is not a contractual employee at all, but instead is a *statutory* employee.

      Despite this, Plaintiff substantially relies on a portion of a sentence in the Agreement which states that "all Personnel shall remain employees of Contractor at all times" to contend that Mr. Zaragoza remained the employee of Adecco. This contention, however, is misplaced. It is well settled under Pennsylvania law that parties are not bound by their characterization of the employee-employer relationship. Rather, as the *Red Line* court explained "although the provisions of the lease tend to indicate that the Claimant was to remain an employee of Princeton, *the determining factor is the actual conduct of the parties and whether Red Line actually had the power to control Claimant's work and manner of performance*." Red Line, 138 Pa. Commw. at 383. Hence, even where parties agree that the borrowed employee is to remain an employee of the lending employer, Pennsylvania courts have nevertheless concluded that the borrowing employer is still the employer for workmen's compensation purposes. Wilkinson, 412 Pa. Super. at 440. Thus, Plaintiff's contention in this regard is without merit.

      In addition, the fact that the Agreement contained a provision whereby BASF Corporation was only to be considered a statutory employer in the state of Louisiana does not

sway the Court's opinion that BASF was Mr. Zaragoza's statutory employer under the facts here because parties are not bound by their characterization of the employee-employer relationship. For this very same reason, the fact that, when Mr. Zaragoza was first taken to a hospital for treatment after his accident, certain BASF employees–including a mid-level manager and a medical treatment intake worker–proclaimed that Mr. Zaragoza was not an employee of BASF for purposes of emergency medical care and coverage does not change the fact that BASF was Mr. Zaragoza's statutory employer for the purposes of the Act.

Thus, the crucial fact remains which employer had the right to control, not only Mr. Zaragoza's work, but also the manner in which it was performed. Id.  The undisputed facts here, clearly establish that at the time Mr. Zaragoza was injured, Adecco had no significant control over the manner in which its employees carried out the work to which they were assigned. Adecco's largest responsibility in relation to Plaintiff's work was his placement in the services of Defendant.  After placement, at no point did Adecco purport to instruct Mr. Zaragoza on how he should carry out his work assignments while at BASF.  Instead, BASF controlled and supervised Mr. Zaragoza's day-to-day work, and the manner in which he performed this work.

## Conclusion

The Court, therefore, concludes that Mr. Zaragoza was under the control of BASF at the time of his accident, and that BASF was his statutory employer under the Act.  Accordingly, his suit against BASF is barred and summary judgment is granted in favor of the Defendant.  An appropriate Order follows.